Joseph R. Wallace, Appellant, *v*. The Trustees of the General Assembly of the United Presbyterian Church of North America, a Corporation organized under the Laws of Pennsylvania.

*Church law—Wrongful ousting of preacher from his office—Equity.*

If, in violation of its own laws, a church ousts a preacher from his pulpit and in effect wrongfully deprives him of his living, he can have recourse to the civil courts for restoration of his rights.

When rights of property are in question, civil courts will inquire whether the organic rules and forms of proceeding described by the ecclesiastical body have been followed.

*Equity—Parties defendant—Church law—United Presbyterian Church.*

A bill in equity filed by an ordained preacher of the United Presbyterian Church alleging that he had been wrongfully deprived of his office is properly served upon the trustees of the general assembly, a body incorporated under the act of March 22, 1860, by the title of " Trustees of the General Assembly of the United Presbyterian Church of North America," and when so served the bill will be entertained by a court of equity.

Argued Oct. 31, 1899. Appeal, No. 165, Oct. T., 1899, by plaintiff, from decree of C. P. No. 1, Allegheny Co., June T., 1898, No. 581, dismissing bill in equity. Before GREEN, MC-COLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Reversed.

Bill in equity for an injunction.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing bill.

*William A. Sipe*, with him *Frank R. Agnew*, for appellant.— The trustees are the corporate body which has continued and perpetual existence. It draws its life from the annual election of three new members by the general assembly. It grows out of the general assembly, and sustains the same vital relation to it as the branch does to the tree, or as the member of the human body does to the body itself. Thus, we maintain that the general assembly is in court by process upon these defendants, and a decree of the civil court granting the prayer of the plaintiff will be binding upon the general assembly for enforcement.

*R. E. Stewart,* for appellee, filed no paper-book.

OPINION BY MR. JUSTICE DEAN, December 30, 1899:

This is an appeal by plaintiff from a decree in the court below dismissing his bill because not served on proper parties defendants.

It appears that plaintiff is an ordained preacher of the United Presbyterian Church, and had charge of a congregation of about 250 members of that denomination at Jamestown, Mercer county, from 1871 to 1892; in the latter year charges were preferred against him before the presbytery of which he was a member, by eight members of the congregation, averring mainly that he was contumacious, and treated the church court of session with the utmost disrespect; there was no charge of immorality or neglect of pastoral work. About three fifths of the members sided with the pastor, and remonstrated to the presbytery against sustaining the prosecution. The presbytery sustained the complaining members and dissolved the pastoral relation. Plaintiff then appealed to the synod which, after hearing, set aside the action of the presbytery and reinstated plaintiff; an appeal was taken by the presbytery from the decree of the synod to the general assembly, which body sustained the action of the presbytery. Plaintiff avers that the whole proceeding subsequent to the action of the synod was arbitrary, illegal and void, because in direct violation of the laws and usages of the church. Therefore he filed his bill in the court below averring the facts, and further averring that the illegal action of the church courts had deprived him of his salary which his congregation was willing to pay to him, had injured him in his standing and reputation as a Christian teacher, and had practically excluded him from the reasonable exercise of the profession by which he lived.

The bill was served on the trustees of the general assembly. They answered that they were not proper parties to the bill; that they had no part in the transactions complained of, but were merely trustees and managers of the property of the church. To sustain their answer they referred to the charter of defendant. The court below on inspection of the charter sustained the answer and dismissed the bill. From this decree plaintiff appeals, assigning for error the action of the court in dismissing his bill.

Unquestionably, if the averments of the bill be sustained a court of equity has jurisdiction. No question of faith or doctrine of which the ecclesiastical courts of his church have sole jurisdiction is involved. It is simply whether plaintiff has been illegally deprived of his rights of property. If, in violation of its own laws, the church has ousted him from his pulpit and in effect wrongfully deprived him of his living, he can have recourse to the civil courts for restoration of his rights. A church cannot illegally wrest from its servants their property, any more than can an individual. "When rights of property are in question, civil courts will inquire whether the organic rules and forms of proceeding prescribed by the ecclesiastical body have been followed:" O'Hara v. Stack, 90 Pa. 477. The plaintiff's averments, that, in violation of the laws of the church, he has been deprived of his property are not denied; whether they are well founded is a question on which we pass no opinion; the time for such opinion is after adjudication and decree in the court below. For the purposes of this case we must assume at this stage of the litigation he is entitled to a hearing, unless it appear that he has served his bill on those who cannot be legally called upon as representatives of the assembly to answer. How is the "generally assembly of the United Presbyterian Church" constituted? It is made up of ministers and ruling elders from each presbytery, elected annually, and acts both as a legislative and judicial body. It is not a continuous body, as is a civil court; its sessions are short, and final adjournment is dissolution of the court or legislature until the next annual meeting, which may be of wholly different commissioners or delegates. But the end of all functions on the part of particular persons does not destroy the legal life of the artificial being, the church corporation; that continues to exist in the eye of the law, though it can neither legislate nor adjudge. We look to the statute to ascertain who represents it in the interval, or rather, who without legislative or judicial power represents it continuously; whose powers continue, not for a few days in each year, but which within a limited sphere are unending. The defendant was incorporated by act of the legislature of March 22, 1860. By the 1st section it is enacted: "That James McCandless and six others and their

successors in office are constituted a body politic and corporate in deed and in law, under the title of 'Trustees of the General Assembly of the United Presbyterian Church of North America.'" Then the 2d section declares that said corporation shall have all the rights, franchises and powers which by law pertain to corporations. Then the 5th section declares that said corporation by the name aforesaid shall be able to sue and be sued in any court of law or equity in any plea or demand of whatever nature the same may be. Then section 7 declares that the seven corporators named shall constitute the board of trustees until the next meeting of the general assembly, and then by a system of classification a certain number, not more than three, are retired each year and their places are filled at the annual meeting of the assembly, so that the board of trustees never dissolves. The 8th section provides it shall hold quarterly and may hold special meetings. Beyond all question this body is the representative of the corporation, at least in things militant, and if the legislature or judiciary of the church illegally deprives a preacher of his property, service of writ or bill on the trustees will bring the corporation into court, where it must answer the complainant. And this was the view taken by the general assembly itself when the suit was first brought. Notice this extract from the report of the committee on judiciary to whom the complaint of Rev. Wallace had been referred: "In the case of the trustees of the general assembly in their defense of the suit brought against them by Rev. J. R. Wallace of Frankfort presbytery, asking for measures to be adopted for their defense and protection, your committee would report that the trustees have full power to employ counsel and take all necessary steps for their defense in the suit brought against them; and if they cannot persuade the plaintiff in this case to desist from the prosecution of his claim by moral suasion they are hereby directed to employ counsel."

The plea of the trustees that they are but the custodians of the money and property of the church, and are destitute of power to prepare a defense for it in a lawsuit, therefore could not properly be served with a bill, is apparently an afterthought. It looks more like a narrow view suggested in the consultation room of a worldly lawyer; it certainly is not the broader and common sense view of the judiciary committee of the general assembly.

We think the service of the bill upon the board of trustees having the custody of the corporation seal was a good service on the corporation.

The decree dismissing the bill is reversed, the bill reinstated and defendants are directed to make answer thereto.